1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12 DONALD SHINN,                                    CASE NO. 1:04-cv-6050 TAG

13                     Plaintiff,                  MEMORANDUM DECISION AND ORDER
                                                   ON PLAINTIFF'S APPEAL FROM
14                                                 ADMINISTRATIVE DECISION

15 _____vs.                                      ORDER REMANDING CASE PURSUANT
                                                   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
16

17 JO ANNE B. BARNHART,                            ORDER DIRECTING THE CLERK TO
   Commissioner of Social Security,               ENTER JUDGMENT IN FAVOR OF
                                                   PLAINTIFF AND AGAINST DEFENDANT
18

19                     Defendant.
   _____/

20          Plaintiff Donald Shinn ("claimant" or "plaintiff") seeks judicial review of an administrative

21 decision denying his claim for disability benefits under the Social Security Act ("Act").  Pending

22 before the Court is claimant's appeal from the administrative decision of the Commissioner of Social

23 Security ("Commissioner").  Claimant filed his complaint on August 3, 2004, and his opening brief

24 on January 7, 2005.  The Commissioner filed her opposition to the appeal on January 27, 2005.

25 Claimant filed a reply brief on February 7, 2005.

26          Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

27 before a United States Magistrate Judge, and, by an order dated March 7, 2005, this action was

28 assigned to the United States Magistrate Judge for all further proceedings.

**JURISDICTION**

_____On February 21, 2001, claimant filed applications for Disability Insurance Benefits ("DIB")
and Supplemental Security Income ("SSI") benefits, alleging disability since March 16, 2000.
(Administrative Record ("AR") 58-61, 374-377).  The application was denied initially and, on
August 19, 2003, claimant appeared before Administrative Law Judge ("ALJ") Michael Haubner, at
which time he heard testimony from claimant and from vocational expert Thomas Dachelet.  (AR
392-427).  On October 22, 2002, the ALJ issued a decision finding that claimant was not disabled.
(AR 14-18).  The Appeals Council denied a request for review on May 31, 2004.  (AR 7-9).
Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to
the district court pursuant to 42 U.S.C. § 405(g).  Claimant filed this action for judicial review
pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the
briefs of both claimant and the Commissioner and will only be summarized here.  Claimant was born
on November 12, 1969, making him 32 years old on the date of the ALJ's decision.  (AR 374, 18).

At the administrative hearing held on October 9, 2002, claimant stated that he lived with his
father and stepmother, has a driver's license, and drives about two times per day for a total of about
60 miles.  (AR 399-400, 404).  Claimant indicated that he completed the twelfth grade in school and
last worked in March of 2000 as a pest control technician and supervisor.  (AR 417-419, 87).  His
past work consists of work as a pest control technician and supervisor, an oil field technician/laborer,
a warehouseman, and a telemarketer.  (AR 87, 417-419).  He testified that he was disabled due to "a
bad nervous system" and blood disorders.  (AR 400).  He described his blood disorder as "a very rare
acute form of leukemia."  (AR 400).  He indicated that he stopped drinking alcohol in early 2000 and
had not used elicit drugs since 1987.  (AR 402).

Claimant stated that he has constant, severe pain in his head to the extent that it feels "like
[his] brain is being crushed."  (AR 403).  He indicated that he was taking medication called
Diamoxin to reduce the amount of fluid on his brain and to relieve his head pain.  (AR 404-405).
Claimant testified that he also has muscle pain all day long, every day, and takes the medication

1    Neurontin to alleviate the pain.  (AR 405).  He further stated that he experiences dizziness, for which

2    he has been prescribed the medication Antivert and has problems with his stomach.  (AR 406-407).

3    He indicated he has problems with his memory, concentration and blurred vision as well.  (AR 415-

4    417).

5         Claimant testified that he also has difficulty using his hands.  (AR 410).  Because of

6    problems with his hands, he stated that he could not repetitively bend down and pick up wood, but

7    could do so occasionally.  (AR 410).  He explained that he quickly loses the feeling in his hands

8    when gripping or clenching and has difficulty picking up items like coins or a pencil.  (AR 411).

9    With regard to his hand limitations, claimant stated that when he last played the guitar, about two

10   weeks prior to the hearing, he could only play for three or four minutes before having to stop because

11   of problems with his hands.  (AR 412).

12        Claimant testified that he could stand for about one hour before having to sit down or rest.

13   (AR 408-409).  He indicated that he could sit continuously about one hour as well.  (AR 409).  He

14   stated that he could lift no more than 15 pounds at one time, could walk about 15 to 20 minutes at

15   one time, and could not bend because he gets light-headed or dizzy.  (AR 409-410).  Claimant also

16   indicated that he must also avoid heights, because he gets dizzy, and he therefore does not climb

17   ladders.  (AR 411).   He stated that, on average, he needs to lay down and rest about two times per

18   day, for 20 to 40 minutes at a time, because he gets dizzy and fatigued.  (AR 414).

19        At the administrative hearing, held on October 9, 2002, the ALJ also heard the testimony of

20   vocational expert Thomas C. Dachelet.  (AR 417-426).  Regarding claimant's past relevant work,

21   Mr. Dachelet indicated that his position as a pest control technician and supervisor was a light

22   exertion, skilled job, actually performed at a medium physical exertion level, his position as a oil

23   field technician and laborer was a very heavy exertion, unskilled position, his position as a

24   warehouseman was a medium exertion, unskilled position, and his position as a telemarketer was a

25   sedentary level, semi-skilled position.  (AR 419, 421-422).

26        The ALJ asked Mr. Dachelet if there were jobs available for an individual with claimant's

27   age, education, and work experience combined with the residual functional capacity to lift and carry

28   50 pounds occasionally and 25 pounds frequently and to stand and walk six hours in an eight-hour

3

workday with breaks every two hours combined with the necessity to avoid climbing, balancing, and

heights, irritants such as dust, fumes, gases, chemicals, et cetera, alcohol, and complex tasking, and

can only occasionally bend.  (AR 423-424).  Given this hypothetical, Mr. Dachelet stated that the

individual could perform claimant's past relevant work in telemarketing.  (AR 424).  In addition, Mr.

Dachelet opined that the hypothetical individual could perform the "entire world of sedentary and

light," unskilled level positions.  (AR 424-425).

The ALJ next asked Mr. Dachelet if there were jobs available for an individual with

claimant's age, education, and work experience combined with the residual functional capacity to lift

and carry 20 pounds occasionally and 10 pounds frequently and to stand and walk two hours out of

six combined with the necessity to avoid climbing, concentrated exposure to hazards such as heights

and machinery, and irritants such as dust, fumes, chemicals, and alcohol but can occasionally stoop,

kneel, crouch and crawl.  (AR 425).  Given this hypothetical, Mr. Dachelet again stated that the

individual could perform claimant's past relevant work in telemarketing.  (AR 425).  Mr. Dachelet

also found that the hypothetical individual could perform the "entire world of sedentary, unskilled"

level positions.  (AR 425).

The ALJ's final hypothetical asked Mr. Dachelet if there were jobs available for an individual

with claimant's age, education, and work experience combined with the following limitations:

should avoid heights and ladders, can stand one hour at a time, can walk 15 to 20 minutes at a time,

can sit one hour at a time, can occasionally bend, can occasionally do ramps and stairs, and must lay

down two times a day for 20 to 40 minutes at a time.  (AR 425).  Given this hypothetical, Mr.

Dachelet stated that the individual could not perform any of claimant's past relevant work or any

other work in the national economy.  (AR 425-426).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

that a claimant shall be determined to be under a disability only if his impairments are of such

4

severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work he has performed in the past.  If claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  See, 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

///

**ALJ'S FINDINGS**

The ALJ found at step one that claimant has not engaged in substantial gainful activity since his alleged onset date, March 16, 2000.  (AR 14).  At step two, the ALJ determined that claimant has the severe impairments of pseudotumor cerebri and polycythemia, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 14).  The ALJ found that claimant has impairments that could reasonably be expected to produce some of the symptoms he alleged, but the degree of limitation he alleged was not supported by the objective medical evidence and was not entirely credible.  (AR 15).

The ALJ concluded that claimant has the residual functional capacity ("RFC") to perform sedentary work not involving more than simple, repetitive tasks.  (AR 15).  He found that claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and/or walk two hours out of six, can perform simple, repetitive tasks, can only occasionally stoop, kneel, crouch or crawl and should avoid climbing, exposure to concentrated hazards and pulmonary irritants and drinking alcohol.  (AR 15, 16).  The ALJ found that, based on claimant's ability to perform sedentary exertional level work, coupled with the vocational expert's testimony, claimant could return to his past relevant work as a telemarketer and could also perform other sedentary jobs existing in significant numbers in the national economy.  (AR 15, 16-17).  The ALJ indicated that, since claimant's nonexertional limitations do not significantly affect his ability to perform a broad range of unskilled sedentary work, a finding that claimant is not disabled was also appropriate under the framework of Grid rule 201.28.  (AR 17-18).  Accordingly, the ALJ determined at step four of the sequential evaluation process, and alternatively at step five, that claimant was not disabled within the meaning of the Social Security Act.  (AR 17-18).

**ISSUES**

Claimant contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1.  The ALJ's RFC finding is not supported by substantial evidence since the ALJ erred by failing to properly address the opinion of Kaye H. Kilburn, M.D.; and

///

7

1      2. The ALJ erred at step four of the sequential evaluation process by finding that claimant

2  could perform his past relevant work as a telemarketer, a position that is considered semi-skilled.

3      This court must uphold the Commissioner's determination that claimant is not disabled if the

4  Commissioner applied the proper legal standards and there is substantial evidence in the record as a

5  whole to support the decision.

6  **DISCUSSION**

7  **A. Physician Opinion**

8      Claimant asserts that the ALJ erred by failing to provide reasoning for rejecting Dr. Kilburn's

9  diagnoses and assessed limitations. (Court Doc. 10, pp. 4-7). Claimant specifically argues that the

10  ALJ erred by failing to credit Dr. Kilburn's opinion that claimant's symptoms were caused by

11  chemically induced encephalopathy and peripheral neuropathy, instead of pseudotumor cerebri and

12  polysythemia. (Court Doc. 10, pp. 4-7). Claimant contends that a remand is appropriate in this case

13  in order for the ALJ to properly evaluate Dr. Kilburn's opinions and to further develop the record

14  taking into consideration her findings. (Court Doc. 10, p. 7). The undersigned agrees.

15      The courts distinguish among the opinions of three types of physicians: treating physicians,

16  physicians who examine but do not treat the claimant (examining physicians) and those who neither

17  examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 839 (9th

18  Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the

19  claimant and his physical condition. Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989). Thus,

20  more weight is given to a treating physician than an examining physician. Lester, 81 F.3d at 830.

21  However, the treating physician's opinion is not "necessarily conclusive as to either a physical

22  condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 7474, 751 (9th Cir.

23  1989) (citations omitted).

24      The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself

25  constitute substantial evidence that justifies the rejection of the opinion of either an examining

26  physician or a treating physician." Lester, 81 F.3d at 830. Rather, an ALJ's decision to reject the

27  opinion of a treating or examining physician, may be *based in part* on the testimony of a

28  ///

1   nonexamining medical advisor.  Magallanes, 881 F.2d at 751-55; Andrews v. Shalala, 53 F.3d 1035,

2   1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as

3   laboratory test results, contrary reports from examining physicians, and testimony from the claimant

4   that was inconsistent with the physician's opinion.  Magallanes, 881 F.2d at 751-52; Andrews, 53

5   F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating

6   physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate

7   reasons for doing so, and those reasons are supported by substantial record evidence.  Roberts v.

8   Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

9       Dr. Kilburn examined claimant on July 9, 2002.  (AR 306-316).  Dr. Kilburn noted that

10  claimant was previously employed at different pest control companies as an applicator from 1994 to

11  2000 and was spraying the chemical Dursban, as well as many other pesticides, daily without

12  suitable respiratory protection.  (AR 306-307).  Claimant complained of many symptoms including

13  headaches, dizziness and lightheadedness, fatigue, dryness of the mouth, throat and nose, and eye

14  and throat irritation.  (AR 307).  Dr. Kilburn diagnosed claimant with chemical encephalopathy due

15  to exposure to organophosphate pesticides, peripheral neuropathy due to organophosphates and mild

16  systemic hypertension.  (AR 312).  She noted that the examination revealed excessive redness and

17  mucus threads in the nose, no plantar responses, decreased muscle strength, abnormal past-pointing,

18  abnormally slow alternating movements, hypertension, abnormally slow simple reaction time,

19  diminished grip strength in both hands, abnormal visual fields performance on the right eye,

20  excessive hearing losses in the right ear, abnormal vocabulary and digit symbol substitution scores,

21  and diminished immediate verbal recall.  (AR 312).  She noted that neurobehavioral testing showed

22  11 total abnormalities that exceed the allowable zero to two abnormalities (with a not to be exceeded

23  count of three) in people unexposed to chemicals.  (AR 312).  She found that these abnormalities are

24  similar to those seen in the previous patients who shared organophosphate exposure.  (AR 312).  Dr.

25  Kilburn indicated the previous diagnoses of pseudotumor cerebri and polycythemia were made

26  without significant evidence and were thus disregarded.  (AR 313).  She further indicated that

27  claimant's illness had to be self-managed with a policy of avoidance, diary keeping to isolate specific

28  ///

1   irritants and attention to what areas of his activities produce irritation versus which produce a

2   pleasant and livable sensation versus those which are in a sense neutral.  (AR 313).  Dr. Kilburn

3   indicated that claimant must then diminish the noxious ones and increase the pleasant ones.  (AR

4   313).

5          Dr. Kilburn opined that the ingestion of alcohol and use of many detergents and insect sprays

6   were adverse to claimant's condition.  (AR 313).  She further opined that claimant may want to try

7   sweating induced by sauna or hot tub with proper care to avoid dehydration when engaging in these

8   activities, and claimant should rest when efficiency begins to drop.  (AR 313).  Dr. Kilburn

9   recommended that claimant close his eyes in a dark room with or without classical music when

10  resting and that he should break the day into a series of work sessions of an hour or two.  (AR 313).

11         Dr. Kilburn also reviewed the record and reiterated her opinion that claimant had

12  encephalopathy and peripheral neuropathy due to exposure to organophosphate pesticides and

13  indicated that he did not have pseudotumor cerebri or polycythemia.  (AR 314-316).  She noted that

14  the so called abnormality polycythemia did not exist and the disorder pseudotumor cerebri had been

15  misdiagnosed based on disc appearance and slightly elevated cerebrospinal fluid opening pressure

16  during lumbar puncture.  (AR 316).

17         In this case, in making his RFC determination, the ALJ notes Dr. Kilburn's diagnoses and

18  treatment plan (avoidance of the irritating substances) as well as the fact that Dr. Kilburn disregarded

19  the previous diagnoses of pseudotumor cerebri and polycythemia.  (AR 15).  However, as correctly

20  asserted by claimant, the ALJ provides no reasoning for rejecting Dr. Kilburn's findings.

21         Instead, it appears that the ALJ chose to adopt the findings of a state agency reviewing

22  physician as well as portions of the findings of Drs. Neer, Wirta and Moore.  David Drew Neer,

23  M.D., reported on April 14, 2000, that claimant had undergone a lumbar puncture procedure which

24  revealed a possible diagnosis of pseudotumor cerebri.  (AR 15, 144-145, 147-148).  On April 18,

25  2000, David Wirta, M.D., indicated claimant had been diagnosed with pseudotumor cerebri by CT

26  scan and spinal tap.  (AR 15, 262).  Dr. Wirta indicated that claimant "has what appears to be

27  pseudotumor cerebri."  (AR 262).  On April 12, 2001, Robert A. Moore, M.D., examined claimant

28  and diagnosed him with pseudotumor cerebri and polycythemia.  (AR 264-267).  Dr. Moore opined

10

1   that claimant could stand or walk six hours out of an eight hour day, in two hour intervals, he could

2   not climb, balance or work at heights, he could sit in an unrestricted manner and could occasionally

3   bend and stoop.  (AR 267).  Dr. Moore also found that claimant could lift and carry up to 50 pounds

4   occasionally and up to 25 pounds on a frequent basis, he could operate foot controls, he had full use

5   of his upper extremities for pushing, pulling, operating hand controls, and using tools, he could

6   perform unrestricted simple gripping and distal fine coordinated movements of the hands and

7   fingers, and could perform simple and complex tasks.  (AR 267).  Finally, a state agency non-

8   examining physician reviewed the record on May 9, 2001 and concluded on a check-box form that

9   claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk

10  two hours in an eight hour workday, and sit for about six hours in an eight hour workday, with

11  stooping, kneeling, crouching and crawling only occasionally and no climbing, balancing or

12  exposure to hazards.  (AR 277-284).

13          The ALJ accorded substantial weight to, if not entirely adopted, the opinions of the state

14  agency physician to find that claimant had the RFC to lift and carry 20 pounds occasionally and 10

15  pounds frequently, stand and/or walk two hours out of six, perform simple, repetitive tasks, only

16  occasionally stoop, kneel, crouch or crawl and should avoid climbing, exposure to concentrated

17  hazards and pulmonary irritants and drinking alcohol.  (AR 15, 16).  As noted above, however, "[t]he

18  opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the

19  rejection of the opinion of either an examining physician or a treating physician."  Lester, 81 F.3d at

20  830.  In any event, the ALJ is charged with the duty of providing specific, legitimate rationale for

21  any discounting of Dr. Kilburn's opinion, Flaten, 44 F.3d at 1463; Fair, 885 F.2d at 605, and it is

22  apparent that the ALJ failed to do so in this case Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir.

23  1987) (mere reference to a physician's opinion does not satisfy the requirement that the ALJ set forth

24  "specific, legitimate reasons" for rejecting it).

25          Since the ALJ failed to provide any rationale whatsoever for discounting Dr. Kilburn's

26  findings, the ALJ's RFC determination in this case cannot be found to be based on substantial

27  evidence.  A remand is necessary in order for the ALJ to properly evaluate Dr. Kilburn's opinions, as

28  ///

11

1   well as the entire record, to specify the weight given, if any, to each physician and the reasoning for

2   rejecting those physician opinions deemed unsupported, and to formulate a new RFC determination

3   based on substantial record evidence.

4   **B.  Step Four**

5       Claimant next contends that the ALJ erred by finding that he could perform his past relevant

6   work as a telemarketer.  (Court Doc. 10, pp. 7-10).

7       At step four of the sequential evaluation process, the Commissioner determines whether

8   claimant can perform work he has performed in the past.  If claimant is able to perform his past

9   relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If claimant meets his

10   burden of establishing he cannot perform this work, the burden shifts to the Commission to show, at

11   step five in the process, that claimant is able to perform other substantial gainful work in the national

12   economy in view of his age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f);

13   see, Bowen, 482 U.S. at 137.  Thus, claimant has the initial burden of proving he cannot perform his

14   past relevant work, and only then does the burden shift to the Commissioner to demonstrate that he

15   can perform a significant number of jobs in the national economy.  Thomas v. Barnhart, 278 F.3d

16   947, 955 (9th Cir. 2002).

17       Claimant argues that his functional limitations, even as defined by the ALJ in this case,[1]

18   prevent him from performing his past relevant work as a telemarketer, which is a semi-skilled

19   position.  (Court Doc. 10, p. 8).  In her response to claimant's opening brief, the Commissioner

20   concedes that the ALJ erred by finding that claimant could return to his past work as a telemarketer.

21   (Court Doc. 13, p. 8).  Based on this concession, as well as the record evidence which demonstrates

22   that claimant is limited to unskilled work and the position of a telemarketer is semi-skilled work, the

23   undersigned concludes that the ALJ erred at step four of the sequential evaluation process in this

24   case.  It is apparent that claimant is incapable of performing any of his past relevant work.

25   ///

26   ///

27

28      [1]The ALJ determined that claimant was limited to the performance of simple repetitive tasks.  (AR 17).

1   The Commissioner argues that, although claimant cannot perform work as a telemarketer,

2   the ALJ correctly found that claimant could, alternatively, perform a significant number of other

3   unskilled, sedentary jobs existing in the national economy.  (Court Doc. 13, p. 8; AR 16-18).

4   However, as determined above, the ALJ's RFC determination in this case was not supported by

5   substantial evidence because the ALJ failed to properly evaluate and weigh the physician opinions of

6   record.  Accordingly, whether claimant is capable of performing other work in the national economy

7   must be redetermined on remand, taking into consideration a newly assessed RFC for claimant.  A

8   remand is necessary for an appropriate step five determination to be made.

9   **CONCLUSION**

10   The Court has the discretion to remand the case for additional evidence and finding or to

11   award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award

12   benefits if the record is fully developed and further administrative proceedings would serve no useful

13   purpose.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Remand is appropriate when

14   additional administrative proceedings could remedy defects.  Rodriguez v. Bowen, 876 F.2d 759,

15   763 (9th Cir. 1989).  In this case, further development is necessary for a proper determination to be

16   made.

17   A redetermination of claimant's RFC should be performed on remand which takes into

18   consideration the opinions of Dr. Kilburn as well as all other medical professionals of record.  In

19   addition, the ALJ shall fully and fairly develop the record regarding claimant's physical limitations

20   by procuring supplemental medical consultant information which takes into account Dr. Kilburn's

21   July 9, 2002 report.  (AR 306-316).  In addition, claimant's newly assessed RFC shall be presented

22   to a vocational expert, at a new hearing, in order to determine if claimant is capable of performing

23   other jobs available in the national economy, despite his physical and mental impairments and

24   limitations.  The ALJ shall also take into consideration any other evidence or testimony relevant to

25   claimant's disability claim.

26   For the reasons outlined above, the undersigned concludes that the Commissioner's decision

27   to deny claimant disability benefits was not supported by substantial evidence in the record and was

28   not based upon the proper legal standards.

13

1  Accordingly, it IS ORDERED that

2  1.  Claimant's social security complaint IS GRANTED;

3  2.  The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

4  development of the record and further consideration, consistent with this decision, of claimant's

5  status as disabled, including whether on the basis of claimant's age, education, work experience, and

6  residual functional capacity, claimant can perform any other gainful and substantial work within the

7  economy, 20 C.F.R. § 404.1520(f); and

8  3.  Judgment BE ENTERED for claimant Donald Shinn and against Defendant Jo Anne

9  B. Barnhart.

10

11  IT IS SO ORDERED.

12  **Dated:    July 27, 2005**                    **/s/ Theresa A. Goldner**
   j6eb3d                                     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14